**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| AEROSTAR, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HAES GRAIN & LIVESTOCK, INC.; A&D PORK, L.L.C.; and JAMES and SANDI KOPRIVA, <br><br> Defendants. | No. C 11-3058-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  *A. Amount In Controversy Standards* . . . . . . . . . . . . . . . . . . . . . . 9
  *B. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

This is a diversity action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 by a manufacturer of wind turbines, towers, and related components, against three parties who purchased, but never

received, the manufacturer's wind systems from what the manufacturer describes as a "rogue" or unauthorized dealer. The manufacturer seeks declaratory judgment establishing the absence of any contractual relationship between it and each of the purchasers or any other legal duty that would give rise to an obligation on the part of the manufacturer to reimburse the purchasers for payments that they allegedly made to a third party for the purchase of the manufacturer's products or to compensate the purchasers for alleged compensatory damages, punitive damages, and attorney's fees. This case is before me on the purchasers' pre-answer motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, premised primarily on lack of sufficient amount in controversy for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  INTRODUCTION

### A.  *Factual Background*

The plaintiff's Amended Complaint and attached exhibit and the pending motions to dismiss and attached exhibits reveal the following factual background. The plaintiff in this action, Aerostar, Inc., a Massachusetts corporation with its principal place of business in Westport Point, Massachusetts, alleges that it is in the business of manufacturing wind turbines, towers, and related components (wind systems) for sale throughout the United States through a dealer network. Aerostar's only authorized dealer in Iowa is High Plains Investments, Inc., doing business as High Plains Construction, Inc. (High Plains), an Iowa corporation with its principal place of business in Grimes, Iowa. Allegedly unbeknownst to Aerostar, High Plains had an unauthorized third-party agreement with Jet Stream Investments, L.L.C., doing business as Jet Stream Wind Systems (Jet Stream), an Iowa

limited liability company with its principal place of business in Des Moines, Iowa, pursuant to which Jet Stream would sell Aerostar's products to various end-users in Iowa.

The defendants in this declaratory judgment action (collectively, the Purchasers) are Haes Grain & Livestock, Inc. (Haes), an Iowa corporation with its principal place of business in Hancock County, Iowa; A&D Pork, L.L.C. (A&D), an Iowa limited liability company with its principal place of business in Hancock County, Iowa, which has as its members Haes family members; and James and Sandi Kopriva (the Koprivas).  The Purchasers each entered into a Contract and Sales Agreement with Jet Stream for the purchase and installation of a 30-kilowatt wind system manufactured by Aerostar.  The Purchasers each paid Jet Stream in excess of $100,000 for the purchase and installation of a wind system, but never received it.  Jet Stream paid at least some of the funds that it had received from the Purchasers to High Plains, and then High Plains paid Aerostar a deposit of $34,000 for each wind system ordered.  Aerostar alleges that it received a total of $272,000 from High Plains as deposits for wind systems, but is unable to relate any funds it received to any particular order.  Aerostar alleges that it has not received any funds from Jet Stream, and the Purchasers do not now contend that Aerostar has.

Aerostar alleges that it did not deliver any wind systems to High Plains for at least three reasons:  (1) in its Amended Complaint and briefing on the motions to dismiss, Aerostar alleges that it did not deliver any wind systems to High Plains's customers, because of defects created by High Plains in installing certain foundational components prior to shipment of the wind systems; (2) in its briefing on the motions to dismiss, Aerostar alleges that it attempted to develop, but never produced a 30-kilowatt system and, instead, brought a 32-kilowatt system to market, so that no orders for 30-kilowatt systems could be filled; and (3) also in its briefing, Aerostar alleges that High Plains never made full payment for the units as required by the dealership agreement.  Aerostar alleges that

3

it has no obligation to deliver wind systems to Jet Stream's customers, but has nevertheless offered to do so, if purchase terms and conditions are met, including payment. None of the Purchasers has accepted that offer. The Purchasers assert that 32-kilowatt wind systems do not suit their requirements.

Aerostar asserts that the Purchasers could seek full payment for their losses from Aerostar, relying primarily on a confidential "global" settlement demand, dated June 24, 2011, made to Jet Stream, High Plains, and Aerostar by the Koprivas for $135,000. *See* First Amended Complaint, Exhibit D (docket no. 4-1). On the other hand, the Purchasers assert that the value of each of their claims against Aerostar is $34,000. Haes and A&D rely on a Response To Request For Admissions by High Plains in their state court action against High Plains and Jet Stream, filed October 5, 2011, in which High Plains denied that it had tendered to Aerostar deposits of $31,700.00 each for the wind turbine purchased by Haes and A&D, and, instead, asserted that the amount of each deposit tendered to Aerostar was $34,000.00. *See* Motion To Dismiss, Exhibit 5 (docket no. 9-6), ¶¶ 10-11. Similarly, the Koprivas cite information provided by High Plains's attorney to their attorney on November 9, 2011, indicating that High Plains paid Aerostar $34,000 down payment for the turbine ordered by the Koprivas. *See* Motion To Dismiss, Exhibit 5 (docket no. 16-6). Attempts by the Purchasers to settle with Aerostar before Aerostar was brought into state court litigation were not successful.

In the fall of 2011,[1] Haes and A&D brought suit in Iowa District Court for Polk County against Jet Stream and High Plains, asserting the following claims: (1) breach of contract, (2) equitable rescission, and (3) unjust enrichment, restitution, and accounting. On December 13, 2011, Haes and A&D filed an Amended Petition in Iowa District Court for Polk County adding Aerostar as a defendant and asserting, in addition to the original claims against Jet Stream and High Plains, a new and separate claim of unjust enrichment, restitution, and accounting against Aerostar seeking judgment in an amount corresponding to any and all payments received by Aerostar from High Plains in connection with the orders for the 30-kilowatt wind systems placed by Haes and A&D to be determined through an accounting. *See* Motion To Dismiss (by Haes and A&D), Exhibit 8 (docket no. 9-9) (amended state court petition by Haes and A&D).

On February 1, 2012, the Koprivas brought suit in Iowa District Court for Polk County against Jet Stream, High Plains, and Aerostar, asserting the following claims against Jet Stream and High Plains: (1) breach of contract, (2) breach of express warranty, (3) breach of implied warranty, (4) negligence, (5) misrepresentation, (6) consumer fraud, (7) equitable rescission, and (8) unjust enrichment, restitution, and accounting; a separate claim against Aerostar for unjust enrichment, restitution, and accounting, seeking judgment in an amount corresponding to any and all payments received by Aerostar from High Plains in connection with the order for a 30-kilowatt wind system placed by the Koprivas to be determined through an accounting; and claims against Jet Stream, High Plains, and

---

[1] The filing date stamp on the copy of the state court Petition attached to the Motion To Dismiss by Haes and A&D is unreadable. *See* Motion To Dismiss, Exhibit 7 (docket no. 9-8). However, the date of the filing of the Petition was necessarily on or prior to October 5, 2011, because High Plains filed a Response To Request For Admissions in that action on October 5, 2011. *See* Motion To Dismiss, Exhibit 5 (docket no. 9-6).

Aerostar for (1) conversion of funds each received as payment for the wind system ordered by the Koprivas, and (2) a constructive trust for those funds. Motion To Dismiss (by the Koprivas), Exhibit 4 (docket no. 16-5) (state court petition by the Koprivas).

### *B. Procedural Background*

On November 2, 2011—that is, before Aerostar was added to either state court lawsuit—Aerostar filed a Complaint And Request For Declaratory Judgment, at least roughly analogous to the present action, but only against Haes and A&D, in the United States District Court for the Southern District of Iowa (Case No. 11-CV-514). However, Aerostar promptly filed a Notice Of Dismissal Without Prejudice in that action on November 7, 2011.

On November 7, 2011, Aerostar filed a Complaint And Request For Declaratory Judgment (docket no. 2) initiating the present action in this court against Haes, A&D, and the Koprivas. Aerostar filed a First Amended Complaint And Request For Declaratory Judgment (docket no. 4) shortly thereafter, on November 11, 2011. In the First Amended Complaint, Aerostar asserts diversity jurisdiction and sufficient amount in controversy pursuant to 28 U.S.C. § 1332 and, in the alternative, that the amount in controversy as to the Koprivas exceeds the jurisdictional amount, so that the court has supplemental jurisdiction over Haes and A&D pursuant to 28 U.S.C. § 1367(a). In its First Amended Complaint, Aerostar seeks judgment declaring the following: (1) the absence of a contractual relationship, whether express or implied, between Aerostar and each of the defendants; (2) the absence of any duty or obligation on the part of Aerostar to pay a refund to any of the defendants of the monies allegedly paid by them to Jet Stream; and (3) the absence of any duty or obligation on the part of Aerostar that would entitle the defendants to recover damages and attorney's fees from Aerostar, including but not limited

6

to, contract damages, tort damages (including emotional distress damages), and punitive damages. Aerostar also seeks an award of such further relief as the court may deem appropriate.

On January 10, 2012, defendants Haes and A&D filed a joint pre-answer Motion To Dismiss (docket no. 9), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Haes and A&D assert that this court lacks subject matter jurisdiction over Aerostar's First Amended Complaint, because Aerostar cannot demonstrate that the amount in controversy exceeds the sum or value of $75,000, as to *any* of the defendants. In the alternative, Haes and A&D argues that, if Aerostar can satisfy the amount in controversy as to the claim for declaratory judgment against the Koprivas, the court should decline to exercise supplemental jurisdiction over Aerostar's claim against Haes and A&D, because Aerostar's claims for declaratory judgment overlap with their pending state court case, citing *Wilton v. Seven Falls*, 515 U.S. 277 (1995). In essence, Haes and A&D assert that the amount in controversy as to each of them (and the Koprivas) is only the total amount of the deposits tendered to Aerostar by High Plains for their orders, that is, $34,000 for each of them. Aerostar filed a Resistance (docket no. 12) to the Motion To Dismiss by Haes and A&D on January 27, 2012. In essence, Aerostar argues that the amount in controversy is well in excess of the jurisdictional minimum, because the Purchasers have refused to limit their claims to less than the jurisdictional amount, and the defendants could each seek full payment from Aerostar for the loss of funds that they paid to Jet Stream. Haes and A&D filed a joint Reply (docket no. 14) in further support of their Motion To Dismiss on February 3, 2012, reiterating that each Purchaser is seeking from Aerostar only the funds paid by High Plains to Aerostar as deposits on each order, so that the amount in controversy requirement is not met, and that their refusal to stipulate to the amount in controversy is not dispositive.

On February 9, 2012, Haes and A&D filed a Supplement To Reply To Plaintiff's Resistance To Motion To Dismiss (docket no. 18), asserting that, when they asked if a stipulation restricting the claims for damages against Aerostar in the state court actions to less than $75,000 would result in Aerostar consenting to dismissal of this federal declaratory judgment action, Aerostar declined to dismiss this action, even if the Purchasers were to so stipulate. On February 10, 2012, Aerostar filed a Supplement To Plaintiff's Resistance To Motion To Dismiss (docket no. 19), asserting that the Supplement by Haes and A&D distorts or omits relevant facts. Specifically, Aerostar argues that the Purchasers had previously refused to stipulate to an amount in controversy below the jurisdictional minimum, that the Purchasers refused to discuss conditions for dismissal of this action, and that the amount in controversy is determined at the time of filing or removal to federal court, so that a later stipulation as to amount in controversy is only persuasive, not conclusive.

On February 6, 2012, the Koprivas filed their own Motion To Dismiss For Lack Of Subject Matter Jurisdiction Or, In The Alternative, Motion To Stay Proceedings (docket no. 16). The Koprivas also assert that this court lacks subject matter jurisdiction, because Aerostar cannot demonstrate sufficient amount in controversy as to any Purchaser and that the court should decline to exercise jurisdiction over Aerostar's declaratory judgment claims, because those claims are parallel to pending claims in state court encompassing the same issues. The Koprivas also argue that High Plains tendered only $34,000 of each Purchaser's funds to Aerostar as a deposit for each wind system ordered, so that Aerostar cannot prove any greater amount in controversy as to any Purchaser. On February 23, 2012, Aerostar filed its Resistance To [Kopriva] Defendants' Motion To Dismiss (docket no. 20), reiterating essentially the same arguments that Aerostar asserted in resistance to the Motion To Dismiss by Haes and A&D. In addition, Aerostar argues that the Koprivas

8

assert a cause of action for conversion, which is an intentional tort on which an award of punitive damages is possible, suggesting that the amount in controversy is met as to Koprivas. Aerostar also argues that judicial economy favors jurisdiction in this court. On February 27, 2012, the Koprivas filed a Reply To Aerostar's Resistance To Motion To Dismiss (docket no. 21), asserting that the total amount of funds transferred from High Plains to Aerostar ($272,000) is irrelevant to the amount in controversy here, because the disputed funds are only those tendered by High Plains to Aerostar as a deposit on the Koprivas' order, that they have not sought punitive damages against Aerostar in the state court action, that the lack of a stipulation as to amount in controversy is not determinative, and that judicial economy and efficiency are better served in state court.

## II.  LEGAL ANALYSIS

### A.  Amount In Controversy Standards

In this case, subject matter jurisdiction is premised on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]  Section 1332(a) provides, in pertinent part, as follows:

> (1) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> (1) citizens of different states. . . .

28 U.S.C. § 1332(a)(1).  In other words, "'[w]hen the two parties to an action are citizens of different states, as they are here, a federal district court's jurisdiction extends to "all

---

[2] It is well-settled that "'the Declaratory Judgment Act . . . does not provide an independent basis for federal jurisdiction.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Victor Foods, Inc. v. Crossroads Econ. Dev.*, 977 F.2d 1224, 1227 (8th Cir. 1992), with citations omitted).

civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."'" *Scottsdale Ins. Co. v. Universal Crop Protection Alliance, L.L.C.*, 620 F.3d 926, 930 (8th Cir. 2010) (quoting *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002), in turn quoting 28 U.S.C. § 1332(a)).

The parties here do not dispute that there is complete diversity between the plaintiff and the defendants in this action. *See Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010) ("Subject matter jurisdiction asserted under 28 U.S.C. § 1332 may be maintained only where there is complete diversity, that is 'where no defendant holds citizenship in the same state where any plaintiff holds citizenship.'" (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)). Thus, the critical question here is whether the amount in controversy requirement of § 1332 is met. *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 399 (8th Cir. 2011) ("To invoke the jurisdiction of a federal court under 28 U.S.C. § 1332, a plaintiff must allege that the amount in controversy exceeds $75,000."); 28 U.S.C. § 1332.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Such a motion to dismiss may be based on insufficient amount in controversy. *OnePoint Solutions, L.L.C. v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007). Even on a Rule 12(b)(1) motion to dismiss by the opposing party, "the party invoking federal jurisdiction has the burden of proving the requisite amount [in controversy] by a preponderance of the evidence." *Id.*; *accord Scottsdale Ins. Co.*, 620 F.3d at 930 (if the defendant challenges the plaintiff's allegations of the amount in controversy, "then the plaintiff must establish jurisdiction by a preponderance of the evidence." (internal quotation marks and citations omitted)).

More specifically, the Eighth Circuit Court of Appeals has explained "the basics" of assessing amount in controversy, as follows:

> As a party invoking the court's jurisdiction, [the plaintiff] has an obligation to show, by a preponderance of the evidence, facts supporting jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936). In this case, [the plaintiff] has to show the amount in controversy in both counts exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Although the sum claimed by the plaintiff in good faith is usually dispositive, it does not control where it appears to a legal certainty the plaintiff's claim is actually for less than the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883, 886 (8th Cir. 1969). The legal certainty standard is met where the "legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." *JTH Tax, Inc. v. Frashier,* 624 F.3d 635, 638 (4th Cir. 2010) (internal quotation marks and citation omitted); *see also Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S. Ct. 1570, 6 L. Ed. 2d 890 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'"). In other words, whether the plaintiff makes his allegations in good faith is "but a linguistic variance" of the legal-certainty test. *Zunamon,* 418 F.2d at 886 n. 3.
> 
> It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or . . . at the time of removal. *McLain v. Andersen Corp.,* 567 F.3d 956, 965 (8th Cir. 2009); *Kansas Pub. Employees Ret. Sys. v. Reimer & Kroger Assocs., Inc.,* 77 F.3d 1063, 1067–68 (8th Cir. 1996). "The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *St. Paul Mercury,* 303 U.S. at 289, 58 S.

Ct. 586. Neither the existence of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction. *See Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir. 1982) (holding existence of a valid defense limiting plaintiff's recovery to $1,000 did not divest the court of jurisdiction to hear the case); *Klepper v. First Am. Bank,* 916 F.2d 337, 340 (6th Cir. 1990) (holding dismissal of the plaintiff's key claims on summary judgment did not affect the amount in controversy); *Griffin v. Red Run Lodge, Inc.,* 610 F.2d 1198, 1204 (4th Cir. 1979) (determination that one of the aggregated claims, which was necessary to reach the jurisdictional threshold, was without merit did not destroy jurisdiction).

This is not to say subsequent events are entirely irrelevant. "Subsequent events may . . . be relevant to prove the existence or nonexistence of diversity jurisdiction at the time of filing," *Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, Inc.,* 620 F.3d 926, 931 (8th Cir. 2010), and a "distinction must be made . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Powell,* 87 F.3d at 97 (internal quotation marks, citation and emphasis omitted). In considering the types of materials which can contain such "revelations," courts have mentioned the "face of the pleadings," *St. Paul Mercury,* 303 U.S. at 289, 58 S. Ct. 586, and the "proof adduced to the court before trial," *Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir. 2002).

There is admittedly certain tension between the principle that post-removal events do not affect jurisdiction and that pre-trial proofs can be used to assess the amount in controversy as it existed at the time of removal. It is resolved, however, by deferring to the plaintiff's estimate with respect to the amount in controversy whenever the impossibility of recovery is not apparent from the face of the pleadings but emerges from adjudication of the merits. *See McDonald v. Patton,* 240 F.2d 424, 426 (4th Cir. 1957). Further, resort to

> materials developed in discovery is allowed merely to "amplify the meaning of the complaint allegations." *Zacharia,* 684 F.2d at 202.

*Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822-23 (8th Cir. 2011).

The application of these "basics" becomes less clear in a declaratory judgment action, where the plaintiff does not seek to recover any damages. Nevertheless, the Eighth Circuit Court of Appeals has also explained, in a declaratory judgment action, "In our circuit the amount in controversy is determined by the value to the plaintiff of the right sought to be enforced." *Advance Am. Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008) (citing *Massachusetts State Pharm. Ass'n v. Federal Prescription Serv., Inc.*, 431 F.2d 130, 132 (8th Cir. 1970)). More specifically, "[u]nder the plaintiff's viewpoint rule, value is measured by focusing on the object of the particular litigation brought by the [federal] plaintiff." *Id.* (citing *Hunt v. Wash. State Apple Adver, Comm'n*, 432 U.S. 333, 347 (1977)); *James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) ("'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" (quoting *Hunt*, 432 U.S. at 347)).

Even though the declaratory plaintiff's viewpoint is controlling, the amount in controversy is limited to the amount actually at issue between the declaratory plaintiff and the defendant, not the value of all property or funds potentially at issue in the underlying dispute. *See James Neff Kramper*, 393 F.3d at 834 (the amount in controversy was the value of the part of the land that would be destroyed without an injunction against trespass, not the total value of the property, unless the entire value of the plaintiff's property would be protected by the relief requested); *see also Advance Am. Servicing*, 526 F.3d at 1173-74 (the amount in controversy was only the value of the contract between the plaintiff and the

defendant, not the value of all contracts at issue in the uncertified class action in state court). Furthermore, mere speculation by the federal declaratory plaintiff that certain damages or fees might be awarded against it in the underlying dispute will not suffice to establish amount in controversy, particularly where the declaratory defendant has not sought such damages or alleged any basis for them under governing law. *See Advance Am. Servicing*, 526 F.3d at 1176.

The parties' arguments raise the question of the effect of a stipulation concerning the amount in controversy or, more specifically here, the effect of the state court plaintiffs' refusal to stipulate as to the amount in controversy. More than a decade ago, I noted in *Halsne v. Liberty Mut. Group*, 40 F. Supp. 2d 1087 (N.D. Iowa 1999), a case involving amount in controversy in a removed action, that, where Iowa's pleading rules prevent pleading of a specific amount in controversy, the amount in controversy in the state court proceedings is ambiguous from the face of the state court pleadings. *Halsne*, 40 F. Supp. 2d at 1092. In such circumstances, I observed that a stipulation as to amount in controversy "serves to clarify rather than amend the pleadings" as to the amount in controversy at the time of removal or original filing in federal court. *Id.* More recently, Chief Judge Gaitan of the United States District Court for the Western District of Missouri observed that a state court plaintiff's stipulation or refusal to stipulate can be used as specific evidence of the amount in controversy by the state court defendant on removal to federal court, but that a state court plaintiff's "'failure to admit that damages sought will not exceed $75,000 does not amount to an admission that such damages will be sought.'" *Turpin v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 2562076, *2 (W.D. Mo. June 28, 2011) (slip op.) (quoting *Hoffmann v. Empire Machinery & Tools, Ltd.*, 2010 WL 2216631, *3 (W.D. Mo. May 28, 2010)). I agree that refusal to stipulate to the amount in controversy may be evidence of the value of a claim at the time of filing or removal of

a federal action, but it is not a binding admission that the value of the claim exceeds the statutory minimum.

### *B. Analysis*

Here, not only has Aerostar, the party asserting federal diversity jurisdiction, failed to demonstrate by a preponderance of the evidence that the amount in controversy as between Aerostar and any one of the Purchasers exceeded $75,000 at the time that Aerostar filed its declaratory judgment action, when diversity jurisdiction was challenged by the Purchasers, *see Scottsdale Ins. Co.*, 620 F.3d at 930, but I find that it appears to a legal certainty that no such amount is in controversy as between Aerostar and any one of the Purchasers. *See Schubert*, 649 F.3d at 822-23. This is so, for several reasons.

First, the "object of the litigation," as between Aerostar and each Purchaser, is not the entire amount that each Purchaser paid for a wind system, but only the amount of each Purchaser's funds, if any, ultimately deposited with Aerostar by High Plains or Jet Stream, for that Purchaser's order. *See Advance Am. Servicing*, 526 F.3d at 1173-74 (holding that the amount in controversy was only the value of the contract between the plaintiff and the defendant, not the value of all contracts at issue in the uncertified class action in state court); *James Neff Kramper*, 393 F.3d at 834 (holding that the amount in controversy was the value of the part of the land that would be destroyed, not the total value of the property, unless the entire value of the plaintiff's property would be protected by the relief requested). Aerostar has not identified any theory under Iowa law by which it could be liable for each Purchaser's entire loss. *Cf. id.* at 1176 (concluding that speculation about the amount of the opposing party's possible recovery will not suffice to establish amount in controversy, where such recovery is barred by governing law without the pleading of a factual basis). Rather, in aid of its assertion that the Koprivas, at least, seek to recover

from Aerostar all of the funds that they expended for the wind system that they did not get, Aerostar relies on the June 24, 2011, settlement demand and a September 1, 2011, demand from the Koprivas' counsel for information about funds that Aerostar received from either High Plains or Jet Stream.  Neither demand establishes by the preponderance of the evidence that the value of the Koprivas' claim against Aerostar was the total mount of their loss.

As to the June 24, 2011, settlement demand, even if it is permissible to consider representations in confidential settlement negotiations to determine the amount in controversy—a proposition called into question by both Rule 5.408 of the Iowa Rules of Evidence and Rule 408 of the Federal Rules of Evidence—I am not convinced by Aerostar's assertion that the Koprivas demanded their entire loss from Aerostar in the June 24, 2011, "global" settlement demand.  *See* First Amended Complaint, Exhibit D (docket no. 4-1).  That demand indicates that the Koprivas understood that Aerostar had received from High Plains (and/or Jet Stream) only "some, but not all" of the Koprivas' purchase money.  *See id.* at 2.  While the demand does not specify which of several claims might be asserted against which potential defendants (High Plains, Jet Stream, and Aerostar), nowhere does it assert that the potential defendants are jointly and severally liable or suggest any division of the "lump sum" demanded in settlement among those potential defendants.

Similarly, the September 1, 2011, demand by the Koprivas' counsel for information from Aerostar states that the Koprivas' counsel "understand[s] that Aerostar received some, or all, of the Kopriva's [sic] money, but refuses to refund the money."  Aerostar's Resistance To [Koprivas'] Motion To Dismiss, Exhibit 4 (docket no. 20-1), 1.  This assertion that Aerostar had received "some, or all" of the Koprivas' money was in an informal demand for information, prior to any discovery being available to the Koprivas

16

in their state court action. Subsequently, on November 9, 2011, the Koprivas' counsel received information from High Plains indicating that High Plains only forwarded $34,000 of the Koprivas' funds to Aerostar as a deposit for the wind system that the Koprivas had ordered. *Schubert*, 649 F.3d at 823 (noting that resort to materials developed in discovery is allowed to amplify the meaning of the complaint allegations). The amount in controversy should not be based on a Purchaser's pre-discovery speculation about what funds Aerostar might have received, any more than it should be based on Aerostar's speculation about what damages a Purchaser might recover in the absence of any legal or factual basis. *See Advance Am. Servicing*, 526 F.3d at 1176 (concluding that speculation in the absence of a factual or legal basis does not establish amount in controversy). Moreover, Aerostar has never disputed that it only received $34,000 of each Purchasers' money from High Plains as a deposit for each wind system. While Aerostar asserted throughout the pre-filing phase that it did not know the purchasers for whom High Plains had paid deposits totaling $272,000, Aerostar certainly knew that no deposit for an individual wind system exceeded $34,000, and has specifically represented in this litigation that High Plains never made full payment for the wind systems that it ordered.

Second, the Purchasers ultimately limited their state court claims against Aerostar to recovery of sums actually deposited with Aerostar for each Purchaser's wind system. *See* Motion To Dismiss (by Haes and A&D), Exhibit 8 (docket no. 9-9) (amended state court petition by Haes and A&D, asserting a separate claim of unjust enrichment, restitution, and accounting against Aerostar seeking judgment in an amount corresponding to any and all payments received by Aerostar from High Plains in connection with the orders for the 30-kilowatt wind systems placed by Haes and A&D to be determined through an accounting); Motion To Dismiss (by the Koprivas), Exhibit 4 (docket no. 16-5) (state court petition by the Koprivas asserting a separate claim against Aerostar for unjust

enrichment, restitution, and accounting, also seeking judgment in an amount corresponding to any and all payments received by Aerostar from High Plains in connection with the order for a 30-kilowatt wind system placed by the Koprivas to be determined through an accounting, and claims against Jet Stream, High Plains, and Aerostar for (1) conversion of funds each received as payment for the wind system ordered by the Koprivas, and (2) a constructive trust for those funds). While such after-the-fact limitations are not necessarily conclusive as to the value of the Purchasers' claims against Aerostar *at the time that Aerostar filed its declaratory judgment action*, *see Schubert*, 649 F.3d at 822-23 (noting that post-removal or post-filing events do not affect jurisdiction, unless they demonstrate the value of claims at the time of removal or filing), again, Aerostar has not identified any theory under Iowa law by which it could be liable for each Purchaser's entire loss. *Cf. Advance Am. Servicing*, 526 F.3d at 1176 (concluding that speculation about the amount of the opposing party's possible recovery will not suffice to establish amount in controversy, where such recovery is barred by governing law without the pleading of a factual basis). The limitation of the claims ultimately asserted to the sums that Aerostar had actually received from High Plains is consistent with the information known to Aerostar and each of the Purchasers at approximately the time that Aerostar filed its declaratory judgment action about how much of the Purchasers' funds Aerostar had received from High Plains.

   Third, Aerostar's reliance on the amount of potential emotional distress damages and punitive damages on the Koprivas' conversion claim to put the Koprivas' claim over the jurisdictional minimum is misplaced. Aerostar admits that the Koprivas have not actually sought either emotional distress damages or punitive damages on their conversion claim, and I do not find any factual allegations in their state court petition that would support awards of either emotional distress damages or punitive damages under Iowa law.

*Cf. Advance Am. Servicing*, 526 F.3d at 1176. Aerostar's speculation that the Koprivas might amend their state court petition to assert such claims is not enough to establish amount in controversy. *Id.*

Finally, as I noted above, the Purchasers' refusals to stipulate that their claims are for less than the jurisdiction amount does not amount to an admission that damages in excess of the jurisdictional amount will be sought. *See Turpin*, 2011 WL 2562076 at *2.

Therefore, I conclude, to a legal certainty, that the requisite amount was not in controversy when Aerostar commenced this action for declaratory judgment in federal court. *Schubert*, 649 F.3d at 823.

## III. CONCLUSION

Because one of the requirements for diversity jurisdiction was lacking as to each Purchaser, *see* 28 U.S.C. § 1332; *Clark*, 639 F.3d at 399, I need not reach the question of whether or not I should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to any Purchaser whose individual claim did not meet the jurisdictional amount for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332. This action is subject to dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

THEREFORE,

1. The January 10, 2012, pre-answer Motion To Dismiss (docket no. 9), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, filed jointly by defendants Haes and A&D, is **granted**; and

2. The February 6, 2012, Motion To Dismiss For Lack Of Subject Matter Jurisdiction Or, In The Alternative, Motion To Stay Proceedings (docket no. 16), filed by the Koprivas, is **granted** as to their request for dismissal.

3. This matter is **dismissed** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**DATED** this 27th day of March, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA